LOWER *v.* HICKMAN.

Opinion delivered November 12, 1906.

1. EVIDENCE—CONTRACT IN WRITING—VERBAL.—A warranty is so clearly part of a sale that where the sale is evidenced by a written instrument it is incompetent to engraft upon it a warranty proved by parol. (Page 508.)

2. SAME—PROOF OF ANTECEDENT WRITING.—Where a written contract for the sale of a sawmill was apparently complete and unambiguous, reference can not be made to a prior memorandum signed by the vendor to show that the parties intended to engraft into the contract a warranty as to the capacity of the mill. (Page 509.)

Appeal from Saline Circuit Court; *Alexander M. Duffie,* Judge; affirmed.

J. O. Hickman sued W. H. Lower and Dewell Gann, alleging that, on October 14, 1902, they executed to him a promissory note for $850, payable December 1, 1902, on which $210.65 had been paid, and that the remainder was due and unpaid; that the note was given for purchase of a certain sawmill and attachments. Prayer was that the property be seized and sold, and the proceeds applied on the note.

The answer of the defendants alleged false representations and "that at the time said machinery was purchased and said note was made, and as a part of the same transaction, the plaintiff

warranted said machinery to cut 20,000 feet of lumber per day, and but for said warranty of plaintiff the defendants would not have bought said machinery and executed said note; that said machinery would not cut 20,000 feet of lumber per day, and could not be made to cut one-half of said amount."

The note sued on was as follows:

"Benton, Ark., October 14, 1902.

"$850.00

"For value received I promise to pay J. O. Hickman or order the sum of eight hundred and fifty dollars, with interest thereon from maturity until paid at the rate of ten per cent. per annum in installments as follows, viz.:

(Here follow stipulations as to when installments were payable and a description of the sawmill and attachments; whereupon the instrument continues as follows.)

"And it is hereby expressly agreed and understood that the title to said property shall be and remain in the said J. O. Hickman until all of said purchase price is fully paid, together with all interest thereon, and that I am [we are] to hold possession of said property until default in one of the payments of said purchase as stipulated herein, and if I shall make default in either or any of said payments then the said J. O. Hickman shall have the right to take immediate possession of all of said property, and in that event whatever sum I may have paid on said purchase price shall be considered and taken as rent for the use of said property up to the time of such default.

"W. H. Lower.

"Dewell Gann, Security.

Witness:

"D. M. Cloud."

It was shown by Dewell Gann, one of the defendants, that, in the negotiation for the purchase of the machinery, Hickman told him that the sawmill would cut 20,000 feet a day, and that this induced Gann to sign the note as surety for Lower. Hickman, at the same time, made a written statement to Gann in which is included the statement that the mill is of 20,000 feet capacity. This written statement was as follows:

"40-horse power Eng.  11¼.

"60-horse power Boiler, 2 flues 42 in D. 24.

"Saw  Hasp.

"Saw  Carriage.

"Emery Stand.

"Saw Anvil.

"Bull  Wheel.

"16-ft. Line Shaft.

"24-ft. Line Shaft.

"Cut-off Saw Swinging.

"21. Pulleys.

"Sawmill  Cap. 20,000.

"J. O. Hickman, Butterfield, Ark."

Gann testified that it was upon this written statement and the oral statement of Hickman that the mill would cut 20,000 feet per day that Lower & Gann signed the note.

Thereupon, while introducing this statement in evidence, Gann was asked by counsel: "Q.   Did Mr. Hickman warrant the mill to cut 20,000 feet per day?"   This was objected to by the plaintiff for the reason "that the writing sued upon was a writing, and no mention of warranty being made therein."   The court sustained the objection, holding that the note constituted the contract of sale between the parties, and, being in writing, a warranty could not be shown otherwise.   The defendants excepted to this, and it is made a ground for new trial.

The issue as to false representations was properly submitted to the jury, but the court refused to submit to the jury the question whether there was a warranty in the sale of the mill.   The verdict was for plaintiff, and defendants have appealed.

*D. M. Cloud, J. W. Westbrook* and *Mchaffy & Armistead,* for appellants.

1.   It was error to exclude testimony to show that appellee warranted the capacity of the sawmill.   The use of the word "warranty" is not necessary to make a warranty.   64 Fed. 70; 11 Ark. 339.   The memorandum contains the warranty; but even if it did not, but was only a mere memorandum of the articles sold, it would be competent to introduce parol testimony.   30

Am. & Eng. Enc. Law (2 Ed.), 169, 170. An express warranty is not required to be in writing. 103 Ala. 152; 30 Mo. 406. The contract, being partly in writing and partly in parol, is to be regarded as a parol contract, and proof of a warranty is admissible. 98 Am. Dec. 435; 8 Lea, 468.

2. The court's instruction with reference to the warranty and the plaintiff's good faith in making the same is erroneous. Whether the warrantor knew or did not know that he was deceiving is immaterial. It is only necessary that the warranty be made, that purchaser rely upon it, and that it fail. 122 U. S. 575. The test whether representations made by a vendor constitute a warranty is, whether he so intended them, and whether the vendee purchased on the faith of them. 30 Am. & Eng. Enc. Law (2 Ed.), 151, 152.

*Wood & Henderson,* for appellee.

HILL, C. J. An examination of the rejected evidence, the memorandum alleged to have been signed by Hickman and the final contract signed by Lower and Gann, will show that two questions have arisen:

1. Was it competent to prove an oral warranty of the capacity of the sawmill?

2. Was it competent to prove that the words "sawmill cap. 20,000" on the memorandum meant a warranty that the sawmill had a capacity to cut 20,000 feet of lumber per day?

1. A warranty is so clearly a part of a sale that where the sale is evidenced by a written instrument it is incompetent to engraft upon it a warranty proved by parol. The character of the written instrument is not important, so long as it purports to be a complete transaction of itself, and not a mere incomplete memorandum or receipt for money or part of a transaction where there are other parts of it other than warranties. It may be a complete contract signed by both parties and comprehensive and exhaustive in detail, and contain many mutual agreements, terms and stipulations, or it may be a simple bill of sale, or sale note evidencing the sale. The principle is the same in any of these transactions, and oral evidence of a warranty is almost universally excluded when a complete written instrument evidences the sale. It is not important that the instrument be signed by both

parties, for acceptance of the other may be equally binding, and the principle here invoked is as often applied to unilateral as to bilateral instruments. For the statement of the principles involved and the many applications thereof see: 4 Wigmore on Evidence, § 2434; and review in notes; 1 Elliott on Ev. § 580; *Seitz* v. *Brewers' Refrigerating Co.,* 141 U. S. 510; *Hanger* v. *Evins,* 38 Ark. 339; *Hooper* v. *Chism,* 13 Ark. 496; *Reed* v. *Wood,* 9 Vt. 285; *Naumberg* v. *Young,* 44 N. J. L. 331; *Diebold Safe & Lock Co.* v. *Huston,* 55 Kansas, 104; *Am. Mfg. Co.* v. *Klarquist,* 47 Minn. 344; *Miller* v. *Municipal E. L. & P. Co.,* 133 Mo. 205; *McCray Ref., etc., Co.* v. *Woods,* 99 Mich. 269; *Mast* v. *Pearce,* 58 Ia. 579; *Grand Ave. Hotel* v. *Wharton,* 79 Fed. Rep. 45; *Buckstaff* v. *Russell,* 79 Fed. Rep. 611; *Galpin* v. *Atwater,* 29 Conn. 93.

The evidence attempting to prove a warranty by parol was properly rejected.

2. According to the evidence of Lower and Gann, Hickman made them a verbal proposition and put into writing a statement of what constituted the mill output, and at the bottom of this list of property is added: "Sawmill cap. 20,000." This meant, according to their testimony, that the sawmill had a capacity to cut 20,000 feet of lumber per day. The contract signed by Lower and Gann shows it is a complete contract between the parties embracing the subject-matter of their negotiations, except the capacity of the sawmill. The property listed in the contract is described with minuteness and detail, and not in general terms, as in the memorandum. The contract contains every thing in the memorandum except the capacity, and much more. It stipulates terms and times of payment, the security for payment, a reservation of title, the rights of possession before and after default, and that in case of default in full payment the partial payments shall be considered rent. If the capacity of the mill had been omitted from the final contract by accident, mistake or fraud, on proper proof equity would grant relief. *Pickett* v. *Ferguson,* 45 Ark. 177; *Goerke* v. *Rodgers,* 75 Ark. 72; *Mast* v. *Pearce,* 58 Ia. 579; 4 Wigmore, Evidence, § § 2413, 3416.

Antecedent propositions, correspondence, prior writings, as well as oral statements and representations, are deemed to be merged into the written contract, which covers the subject-

matter of such antecedent negotiation, when it is free of ambiguity and complete. *Pickett* v. *Ferguson,* 45 Ark. 177; *Richardson* v. *Comstock,* 21 Ark. 69; *McClurg* v. *Whitney,* 82 Mo. App. 625; 17 Cyc. pp. 596, 598.

There is nothing here to impeach the integrity of the final draft of the contract; and as it embraced everything in the prior negotiations and memorandum except the capacity of the sawmill, it must be presumed that the parties did not intend to engraft into the contract any warranty of the capacity of the mill, and it can not be engrafted upon it by parol.

The case was properly tried on the issue raised as to false representations, and in strict conformity to the last enunciation of this court upon that subject. *La. Molasses Co.* v. *Fort Smith Wholesale Gro. Co.,* 73 Ark. 542.

Affirmed.

RIDDICK AND McCULLOCH, JJ., dissent.