Loe v. McHargue

5-3615                                    394 S. W. 2d 475

Opinion delivered October 11, 1965.

*Coleman, Gantt, Ramsay & Cox,* for appellant.

*Mahony & Yocum,* for appellee.

PAUL WARD, Associate Justice. This litigation began when suit was filed to collect a note given as part payment for used drilling equipment. The signers of the note—the purchasers—defended on the ground that the equipment was defective, and was therefore not as warranted by the seller.

*Facts.* The facts here set out are not in dispute. Appellees (Jim McHargue and J. C. Wolfe, d/b/a Falcon Drilling Company) purchased from appellants (Glen D. Loe and Bert Loe, d/b/a Loe Pipe Yard) certain drilling equipment for the price of $19,500. Of this amount appellees paid $15,000 in cash and gave their note in the amount of $4,500. When the note became past due and unpaid appellants filed suit. Appellees' defense was "that the plaintiffs warranted the drilling rig to be in sound mechanical condition and fit and suitable for the purpose for which it was designed and intended." (The principal contention regards the condition of the "caterpillar diesel" engine).

The trial court found that appellants did warrant the engine to be in A-1 condition; that it was defective; that appellees paid out (as result of the defects) the sum of $2,770.86; that appellants have judgment for the difference—$1,729.14. From said judgment comes this appeal. Appellees claim they should have been allowed greater deductions and so have taken a cross-appeal.

Appellants here contend (a) that the weight of the evidence does not show they warranted the equipment to be in A-1 condition and further (b) that, even if the evidence does show a warranty it was error to permit testimony to show such warranty.

(a) *Sufficiency of the evidence.* We have no hesitancy in affirming this portion of the trial court's finding. It is true that the testimony in this respect was not undisputed, but we think the preponderance lies with the finding of the Chancellor. There was definite testimony that Mr. Loe said the diesel was in A-1 condition. For example one of the appellees testified:

"Q. What, if any, representation did Mr. Loe make to you concerning the engine?

"A. He said that that engine was in A No. 1 shape.

"Q. At that time?

"A. And guaranteed it was expressly to be so, yes."

＊ ＊ ＊ ＊ ＊ ＊ ＊

"Q. Mr. McHargue, you stated that Mr. Loe on more than one occasion represented this equipment to be in A-1 condition, is that correct?

"A. Yes, sir.

"Q. Did you rely upon that express warranty when you purchased the equipment?

(Objected to by Mr. Lile, attorney for Appellants).

"Q. Did you purchase it on the representations, regardless of what we want to call it, that Mr. Loe made of it being in A-1 condition?

"A. Yes, sir, I wouldn't have otherwise given him $15,000.00."

In the case of *Gentry* v. *Little Rock Road Machinery Co.,* 232 Ark. 580 (p. 582), 339 S. W. 2d 101, we said:

"A representation that a used truck was in A-1 condition has been held to be a statement of fact and hence a warranty rather than a mere expression of opinion."

There was also other testimony that the diesel engine was in A-1 condition, and there was no definite denial.

(b) *Oral Testimony.* The next contention made by appellants—that it was error to admit oral testimony to vary a written contract—presents an interesting question. It is well recognized, of course, that usually a written instrument cannot be changed or altered by oral testimony. Appellants further point out and rely on a statement contained in *Lower* v. *Hickman,* 80 Ark. 505, 97 S. W. 681, which reads:

"A warranty is so clearly a part of a sale that where the sale is evidenced by a written instrument it is incompetent to engraft upon it a warranty proved by parol." To the same effect appellants rely on other decisions of this Court, including *Old City Iron Works* v. *Belmont,* 177 Ark. 223, 7 S. W. 2d 772. This argument of appellants is based on the premise that there was such a written contract of sale in this case.

It is true there appears in the record a written instrument in connection with the sale here, but we do not think it constitutes a "sales contract" and especially not such a contract as would preclude the introduction of testimony with reference to a warranty. The instrument in question is captioned a "Security Agreement" an it appears to be just that—it refers almost exclusively to the matter of a lien on the equipment, the safeguarding of the property and the method of enforcing collections of the note. It is silent as regards a warranty of any kind. Also it is shown by the record that there was an oral sale of the equipment several days before the "Security Agreement" was signed. In the *Hickman* case, supra, the court said "The contract signed by Lower and Gann shows it is a complete contract between the parties embracing the subject-matter of their negotiations. . . ." That is not the situation in this case. The *Belmont* case, supra, was decided on an issue and on facts different from those present here. In that case the chancellor held there was an "implied" warranty.

In the case under consideration we have these factors; the warranty was made before the written instrument was signed; the written instrument made no mention of a warranty having been made; and, neither did it contain the entire agreement between the parties. In *Equitable Discount Corp.* v. *Trotter,* 233 Ark. 270, 344 S. W. 2d 334, this Court said:

"We have held that where a contract of sale is in writin and *recites that it constitutes the entire agreement between the parties,* parol evidence is not admissible to vary the terms of the contract."

(Italics ours.)

The Court further stated that:

"It is true that there are exceptions to this rule, and we have several times held that even though the contract provided that the written instrument constituted the entire agreement between the parties oral testimony was admissible to contravene this recitation."

In Louisiana, where most of the sale transactions took place, the court in the case of *Stewart* v. *Clay*, 10 La. App. 727, 123 So. 158 made these relevant statements:

"We cannot agree that the testimony with reference to the warranties as to the capabilities of the heater would tend to vary or contradict the provisions of the written contract, because that contract was completely silent with regard thereto. Had it contained any reference to the ability of the heater to heat a certain number of rooms, or to its inability to heat more than a certain numbers of rooms, it might well be said the testimony as to other warranties would tend to contradict or to vary the terms of the written contract, but, since it was absolutely silent in this regard, it is evident that the contract did not contain the entire agreement between the parties. . . ."

\* \* \* \* \* \* \*

"It has often been held that testimony on a point on which the contract is silent does not tend to vary or contradict the contract. In *Davies* v. *Bierce*, 114 La. 663, 38 So. 488, our Supreme Court said:

" 'The test of admissibility in such case is whether the evidence offered tends to alter, vary, or contradict the written contract, or only to prove an independent, collateral fact about which the written contract was silent. In the former case the testimony is inadmissible; in the latter it is competent and proper.' "

The rule regarding express warranties may also apply to second hand articles. *Crawford* v. *Abbott Automobile Co.*, 157 La. 59, 101 So. 871; *Savoie* v. *Snell*, 213 La. 823, 35 So. 2d 745.

We do not agree with the contention that appellees necessarily waived any parol warranty by inspecting the

diesel engine. We held otherwise in *City of Paragould* v. *International Power Machine Co.*, 233 Ark. 872, 349 S. W. 2d 332. After the diesel engine had been used for some-time by appellees it broke down and was repaired by appellants. Following this, appellees resumed use of the engine without any further complaint. It is argued this incident means that, as a matter of law, appellees waived any previous warranty. It was held otherwise in the case of *Parrett Tractor Company* v. *Brownfiel,* 149 Ark. 566, 233 S. W. 706; *Ives* v. *Anderson Engine & Foundry Co.,* 173 Ark. 112, 292 S. W. 111; *Hall* v. *Magruder,* 175 Ark. 398, 299 S. W. 383.

In the light of the above decisions and under the testimony in the record we are led to conclude the trial court was correct in considering the oral testimony re-garding a warranty of the condition of the diesel engine, and in finding such a warranty was in fact made.

*Counterclaim.* We find no merit in appellees' con-tention they should have been awarded damages caused by other defective items. In our opinion the preponder-ance of the evidence supports the trial court's finding to the effect that only the diesel engine was expressly war-ranted to be in A-1 condition. It was the one item about which the testimony was definite and specific.

It is our conclusion therefore that the decree of the trial court should be, and it is hereby, affrimed on direct and cross-appeal.

Harris, C. J. and Robinson, J., dissent.

CARLETON HARRIS, Chief Justice, (dissenting). I do not think that the evidence established an express war-ranty as to the condition of the diesel engine, but even so, in my view, any warranty was waived by appellees. It is difficult to believe that Mr. Wolfe relied upon any repre-sentations made by Mr. Loe, since Wolfe commented that Loe did not know anything about diesel engines. A buyer hardly depends upon statements of a seller, unless he relies upon a superior knowledge by the seller— and this does not seem to be true in the present case. Not only that, but Mr. Wolfe, who has had more than forty years experience in oil drilling work, examined the engine three

times before closing the sale. In addition, an adjustment was made at the time of the signing of the agreement, wherein appellants procured a longer Kelly joint and bushing at an expense of $850.00 (after complaints by appellees), and it accordingly appears to me that, in accepting the adjustment, appellees waived any alleged oral warranty. I therefore dissent as to the affirmance on direct appeal.

I agree with the majority that there is no merit in the counter-claim, and the Chancellor's findings should, on that phase of the litigation, be affirmed.

I am authorized to state that Mr. Justice Robinson joins in this dissent.